F. B. WALKER & SONS, INC., et al. *v.* ROSE.

No. 39511 · March 16, 1955 · 78 So. 2d 592

*H. W. Gautier,* Pascagoula, for appellant F. B. Walker & Sons, Inc.

498

*W. S. Murphy,* Lucedale; *Karl Wiesenburg,* Pascagoula, for appellant Frank Brumfield.

*J. Boyce Holleman,* Wiggins; *O. F. & J. O. Moss,* Lucedale, for appellee.

HALL, J.

Appellee, a resident citizen of George County, brought this suit in the Circuit Court of George County, against F. B. Walker & Sons, Inc., a domestic corporation domiciled in Jackson County, and Frank Brumfield, a resident citizen of Jackson County, for the recovery of damages for personal injuries sustained when an automobile, driven by appellee, collided with a pick-up truck owned by the appellant corporation and driven by appellant Brumfield on a public highway in George County, and appellants complain of a judgment against them in that suit.

It is contended that the lower court erred in overruling a motion for a change of venue to Jackson County, and in this connection it is not disputed that the cause of action occurred and accrued in George County. Section 1433, Code of 1942, provides that civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found, and if the defendant is a domestic corporation, in the county in which said corporation is domiciled, or in the county where the cause of action may occur or accrue except where otherwise provided. Several exceptions are given but this case does not fall within any of them. We think the plaintiff had the option of selecting the venue either in George County or in Jackson County and that the venue could not be changed upon the application of either defendant since it appears that both defendants were material parties,

there was a valid cause of action against both, and neither was fraudulently joined for the purpose of fixing venue. Indianola Cotton Oil Company v. Crowley, 121 Miss. 262, 83 So. 409; Daniel v. Livingstone, 168 Miss. 311, 150 So. 662; Mississippi Power & Light Company v. Lowe, 179 Miss. 377, 175 So. 196; Myres v. Vinson, 212 Miss. 85, 54 So. 2d 168.

 This case was continued at the return term of the lower court, and at the next succeeding term there was an application for continuance because of the absence of the defendant, Brumfield, allegedly due to his illness, which was overruled. The affidavit was made by one of Brumfield's attorneys and the unsworn certificate of a physician that he would be unable to attend court for about four days was attached. The situation is so nearly exactly that which confronted the Court in King v. McWhorter, 174 Miss. 187, 163 So. 679, that we merely quote from the opinion in that case. "The affidavit, although it stated that appellant's presence was necessary to advise her attorneys in the progress of the trial, failed to state the facts upon which the alleged necessity was based, and furthermore, failed to set out either particularly or in substance what appellant's testimony would be as a witness in her own behalf. The absence of a party is no cause for a continuance when the case is reached for trial, unless his presence be necessary for the proper presentation of the case, and this must be shown to the court, not by way of conclusion, but by evidence justifying such a conclusion. Coleman v. Bowman, 135 Miss. 137, 99 So. 465. Neither in the evidence nor otherwise was it shown that appellant would be a material witness in her own behalf. To justify a continuance upon that ground it was necessary that the application set forth with reasonable clearness the material facts appellant would testify to, if present. Ware v. State, 133 Miss. 837, 98 So. 229.

"Section 576, Code 1930, (same as Section 1520, Code of 1942) provides, among other things, that the affida-

vit to support the application for a continuance should contain the facts expected to be proven by the absent witness that the court may judge of the materiality of such facts, and that the continuance is not sought for delay only, but that justice may be done, and that a denial of a continuance should not be ground for a reversal unless the Supreme Court should be satisfied with injustice resulted therefrom.''

The application in this case failed to comply with the rules laid down in the above cited cases. The record is voluminous, the trial having lasted about eight days. Plaintiff's proof, due to extended and double cross-examination, consumed more than four days, and Brumfield apparently made no effort to get to court before conclusion of the trial. Moreover, counsel for plaintiff stipulated by agreement with opposing counsel as to many of the facts to which Brumfield would testify if present. Looking to the record as a whole, and bearing in mind our numerous decisions to the effect that trial judges are vested with a wide discretion in the matter of continuances, we are unable to say that injustice has resulted from the refusal to continue.

We pass now to the principal contention of the appellant corporation that it was entitled to a peremptory instruction. It is a family corporation engaged in the repair and construction of ships and boats at Pascagoula in Jackson County where it owns and operates what is commonly known as a shipyard. John F. Walker is the president and under the corporate bylaws is the chief executive officer; as such he is vested with wide authority, having the general and active management of the business of the corporation. The facts supported by the evidence, direct and circumstantial, and evidently found by the jury to be true are substantially, in part, as follows: On Sunday morning, May 24, 1953, John F. Walker loaned to Frank Brumfield for his personal use a pick-up truck belonging to the company. John F. Walker and Brumfield had long been close personal

friends. Brumfield was admittedly a narcotic addict and had been committed to the Mississippi State Hospital for treatment in August, 1951. The company's general offices are situated in a building within the shipyard. Adjacent to John F. Walker's private office in the company's general office building there was a private bedroom. Brumfield had spent as much as a week at a time in this bedroom without shaving or leaving the building. On at least one of these occasions he had a hypodermic syringe with him. John F. Walker was looking after him and permitting him to remain there and use this bedroom, at a time when Brumfield was unkempt and would go several days at a time without shaving. The general reputation of Brumfield in Pascagoula was that he was a narcotic addict. On the day of and at the time of the collision between the two vehicles Brumfield was under the influence of narcotics to such extent that he was wholly incapable of safely operating the truck. At the time of the collision he was traveling on a straight road, almost level, with black top hard surface eighteen feet in width with gradual sloping shoulders about eleven feet in width on each side of the hard surface. He was traveling south. Several times he got off the paving and onto the shoulder and even into a shallow ditch at the terminus of the shoulder. He would then pull back into the traveled portion of the road, cross over to the other side, and drive on the shoulder and into the shallow ditch on the opposite side. He was ''zig-zagging'' and weaving from one side of the highway to the other. While executing these maneuvers he ran into appellee's automobile, which appellee was operating on the highway on his own proper side, and inflicted injuries which proved to be almost fatal. After the collision Brumfield was arrested and charged with operating a motor vehicle while under the influence of narcotics. He entered a plea of guilty to this charge and paid a fine. Shortly thereafter he entered a hospital in Kentucky for treatment as a narcotic addict.

Appellant corporation contends that the proof is insufficient to show that John F. Walker knew or in the exercise of the due care should have known that Brumfield was addicted to the habitual use of narcotics. With that contention we do not agree. We think the question was for the jury to decide.

It is also contended that the corporation is not liable because Brumfield was not engaged in any business for the corporation at the time of the collision. Our cases on these questions are numerous, and we content ourselves by quoting from only one of them, viz., Levy, et al. v. McMullen, 169 Miss. 659, 152 So. 899, as follows: "In Anderson v. Daniel, 136 Miss. 456, 101 So. 498, Herrman v. Maley, 159 Miss. 538, 132 So. 541, and in subsequent cases, this Court has become definitely committed to the principle that when the owner of an automobile permits its use by a person known to the owner to be a reckless or incompetent driver, or where by the exercise of reasonable care the owner could or should have so known, the owner is liable for all such injuries as are the natural and probable consequences of the recklessness or incompetency of the said driver while using the automobile so furnished; and in Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318, this Court further declared that a drunken driver is an incompetent driver, and that when an owner furnishes an automobile to another whom the owner knew or ought to have known was liable to be drunk while driving, the owner is responsible for an injury which results as a proximate consequence thereof." To the above we may add that a narcotic addict, especially one who gets in the condition that Brumfield did, is equally as dangerous and incompetent as any drunkard who ever got behind the steering wheel of an automobile.

It seems also to be the contention of the appellant corporation that before it would be liable it would be necessary to call a meeting of the board of directors and have them specifically authorize the president, John

F. Walker, to lend the truck to Brumfield. We have already mentioned and will not repeat the authority of the president. He was the alter ego of the company. The fact that he was the company's highest officer and in charge of the truck was sufficient to support an inference that he was authorized to permit Brumfield to use it. Georgia Casualty Company v. Waldman, (CCA 5) 53 F. 2d 24.

██ ██ It is contended by appellants that the lower court erred in admitting in evidence the proceedings whereby Brumfield was committed to Mississippi State Hospital. They argue that the proceedings are void because not filed by the clerk in Pascagoula until the day after the chancellor signed the decree in vacation at Gulfport. We are not concerned with the question whether the commitment proceedings are void. They were admissible for the purpose of showing that Brumfield appeared in court by waiver of process and admitted in writing that he was in fact an habitual user of narcotics. That was an admission against interest and it was proper to admit it in evidence regardless of the regularity of the commitment proceedings.

██ ██ Appellants argue that the negligence of appellee was the sole, proximate cause of the collision. They contend that he should have turned to his left and onto the wrong side of the pavement and into the path of two oncoming automobiles driven by other parties in order to dodge the truck driven by Brumfield, and that his failure so to do was the sole, proximate cause of the injury. This contention was pressed throughout the trial in the examination of witnesses and was submitted to the jury by the instructions granted to appellants. There was also submitted to the jury the question of appellee's alleged contributory negligence in failing to turn his car to the wrong side of the highway. The peremptory charge requested by appellants was properly

refused. All questions of negligence and contributory negligence are for the jury to determine. Section 1455, Code of 1942.

It is also contended that one of appellee's instructions was erroneous. It is substantially the same as one which we approved in Dixie Drive-It-Yourself System v. Matthews, 212 Miss. 190, 54 So. 2d 263, and appearing in Alexander's Mississippi Jury Instructions, Sections 705 and 2047, and correctly stated the applicable law.

 ██ It is contended, finally, that the verdict for $15,000.00 is so excessive as to evince passion and prejudice on the part of the jury. In addition to external lacerations and bruises about the body, appellee sustained such a severe laceration of the liver that the left lobe was almost completely separated from the remainder. This required a most serious surgical operation. According to statistics a laceration of the liver results in death in eighty-eight per cent of all cases. Appellee, fortunately and thanks to the care of a skillful surgeon, was one of the twelve per cent, who survived. He suffered the most intense pain, and, notwithstanding survival he is still having trouble, and, according to the medical testimony, will continue to have trouble. He is still partially disabled, and his loss of time and medical and hospital expenses amount to a total of over $1,500.00. We have no hesitation in holding that the damages awarded are not excessive.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.