566 So.2d 691 (1990)
In the Interest of T.L.C.
Roy Cortesi
v.
WASHINGTON COUNTY DEPARTMENT OF HUMAN SERVICES and Teresa Leviner Cortesi.
No. 89-CA-789.
Supreme Court of Mississippi.
July 25, 1990.
Rehearing Denied September 19, 1990.
*693 Stephen Nick, Greenville, for appellant.
Joe Gentile, Mike C. Moore, Atty. Gen. J.D. Woodcock, Sp. Asst. Atty. Gen., Jackson, Nick Crawford, Vernita F. King Johnson, Wayne O. Lee, Greenville, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court.

I.
This appeal finds a father challenging a Youth Court adjudication that his two and a half year old girl is an abused child, and suggesting that he did it, followed by an order placing the child in the custody of her mother. The father presents a plethora of procedural points, plus several evidentiary ones. With one limited exception, we affirm.

II.
On June 8, 1986, T.L.C. was born to Roy Cortesi and Teresa Leviner. Roy and Teresa were not married at the time nor have they since married.[1]
*694 On June 23, 1988, Roy and Teresa filed in the Chancery Court of Washington County, Mississippi, their Joint Petition For The Determination of Paternity, Custody And Child Support. The next day that Court adjudged Roy the father of T.L.C. and placed the child within the joint custody of her parents, providing for alternating six months periods of physical custody.[2]
On December 13, 1988, Roy brought T.L.C. to the emergency room at the Delta Medical Center in Greenville, Mississippi, and advised that she had suffered injuries in a fall. Patricia Dubard, the emergency room nurse, examined the little girl and immediately concluded that her bruises were not consistent with a fall and that she had probably been abused physically. Dubard reported this to the Washington County Department of Human Services (DHS),[3] as she by law is required to do. Miss. Code Ann. § 43-21-353(1) (Supp. 1989).
The Youth Court of Washington County, Mississippi, promptly dispatched a social worker to the home of Roy Cortesi to investigate, and this led to a Shelter Hearing held in Youth Court on December 16, 1988, in which the Court found T.L.C. to be "endangered", see Miss. Code Ann. § 43-21-301(3)(b)(i) (Supp. 1989), and placed her in the custody of her mother, Teresa, pending an adjudicatory hearing.
On January 23, 1989, the Youth Court prosecutor delivered to the Youth Court a petition alleging that T.L.C. "is battered as contemplated by said Youth Court Act." Inexplicably, the Court's clerk did not mark the petition "filed" until March 21, 1989. The Court scheduled a hearing for April 5, 1989, but then continued the matter at Roy's request until April 20, 1989.
Prior to the hearing, Roy moved the Court for an order of dismissal on grounds the Youth Court prosecutor had not filed her petition within five days of the Shelter Hearing, citing Miss. Code Ann. § 43-21-451 (1972). In addition, Roy moved for an order transferring the matter to the Chancery Court of Washington County, Mississippi.[4]
On April 20, 1989, the Youth Court held an adjudicatory hearing and in the end adjudged T.L.C. to be an abused child. After a 30 minute recess, the Court reconvened for a dispositional hearing and at the conclusion thereof ordered custody of T.L.C. placed with Teresa subject to possible modification upon completion of a DHS home study of the Roy Cortesi household.
On May 2, 1989, Roy moved the Court for an order dismissing the petition with prejudice or in the alternative, for a new trial. On May 15, 1989, Roy filed another motion to dismiss, this time arguing that the Youth Court lacked jurisdiction. On June 1, 1989, the Youth Court denied both motions.
Roy now appeals to this Court. See Miss. Code Ann. § 43-21-651 (1972).

III.
Two preliminary matters need be considered.

A.
Nick Crawford, guardian ad litem for T.L.C. and Vernita King Johnson, Youth Court Prosecutor, have moved this Court for entry of an order dismissing this appeal on grounds that Roy Cortesi has no standing to appeal the Youth Court's order. Presumably the point is somehow grounded in the fact that Roy was not and has never been married to T.L.C.'s mother.
The point is specious. For one thing, on December 13, 1988, Roy had physical, if not *695 legal, custody of T.L.C.[5] This Court has allowed one having custody of a child to appeal a Youth Court determination that involves custody without a second thought. See, e.g., Collins v. Lowndes County Public Welfare Department, 555 So.2d 71 (Miss. 1989); Prante v. Beggiani, 519 So.2d 1208 (Miss. 1988); In re K.M.G., 500 So.2d 994 (Miss. 1987); In re M.R.L, M.L.L. and V.L., 488 So.2d 788 (Miss. 1986); In re I.G., 467 So.2d 920 (Miss. 1985).
In addition, several sections of the Youth Court Act recognize the parent or guardian of the child as a party to the proceedings by requiring that they be provided with notice. See, e.g., Miss. Code Ann. § 43-21-309(2) (Supp. 1989) (parent, guardian or custodian to be given reasonable oral or written notice of detention or shelter hearing); Miss. Code Ann. § 43-21-501(1)(b) & (c) (1972) ("person or persons who have custody or control of the child" and "parent or guardian of the child if such parent or guardian does not have custody of the child" to be served with summons when a petition is filed). While these statutes do not grant a right of appeal, they do recognize the substantial interest a parent has in the outcome of the proceedings, whatever their nature: the continued custody of their child.
Without further ado, we hold that a person colorably claiming to be a natural parent, even if a non-custodial one, has standing to appeal an order of a Youth Court adjudging custody or other matters regarding his or her child.

B.
The Washington County Department of Human Services filed a motion with this Court seeking to be dismissed as a party to this appeal. The basis for this motion is twofold: (1) the Washington County DHS was not a party to the proceedings below; and (2) the Washington County DHS has no legal interest in the matter.
The Youth Court Prosecutor and T.L.C.'s guardian ad litem have appeared, but this begs the question whether DHS has an independent responsibility in the premises, particularly inasmuch as the prosecutor and guardian ad litem have but joined in DHS's brief. We have encountered a kindred problem on prior occasions. In In Interest of R.T., 520 So.2d 136 (Miss. 1988), we said
We consider Youth Court cases of the utmost seriousness and, in order that we may properly discharge our judicial function, we must have the aid and assistance of diligent and competent counsel for the prosecution and the defense.
R.T., 520 So.2d at 138. In Collins v. Lowndes County Public Welfare Department, 555 So.2d 71, 73 (Miss. 1989) we appropriately chastised DHS's predecessor agency for failing to appear and file a brief.[6] This admonition was particularly appropriate in light of the "duty of every public official or department to render all assistance and cooperation within his or its jurisdictional power which may further the objects of [the Youth Court Act]." Miss. Code Ann. § 43-21-127 (1972).
The motion of the Washington County Department of Human Services to be dismissed as a party to this appeal is denied.

IV.
Roy argues that the Youth Court system unconstitutionally usurps jurisdiction he believes committed exclusively to Chancery Court. He complains specifically of the establishment clause in the Youth Court Act, Miss. Code Ann. § 43-21-107 (Supp. 1989), acting in conjunction with the jurisdictional clause, Miss. Code Ann. § 43-21-151 (Supp. 1989). In support, Roy cites Miss. Const. Art. 6, § 159(d) which provides that the Chancery Court shall have full jurisdiction over "minor's business."
Miss. Const. Art. 6, § 172 (1890) provides:

*696 The legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient.
Section 172 empowered the legislature to establish the youth courts. The question, however, is whether the legislature had authority to vest in the youth courts "exclusive original jurisdiction in all proceedings concerning ... an abused child... ." Miss. Code Ann. § 43-21-151 (Supp. 1989). Roy says it did not because this jurisdiction is constitutionally given the chancery courts and the youth courts are in no way made "inferior" to the chancery courts. Cf. Ex Parte Tucker, 164 Miss. 20, 29, 143 So. 700, 701 (1932).
Without doubt, our constitutional scheme contemplates the power of judicial review of legislative enactments, Alexander v. State ex rel. Allain, 441 So.2d 1329, 1333 (Miss. 1983); however, that power may be exercised affirmatively only where the legislation under review be found
in palpable conflict with some plain provision of the... constitution.
Hart v. State, 87 Miss. 171, 176, 39 So. 523, 524 (1905). Statutes such as the Youth Court Act come before us clothed with a heavy presumption of constitutional validity. See, e.g., Burrell v. Mississippi State Tax Commission, 536 So.2d 848, 858-59 (Miss. 1988); In Re Estate of Smiley, 530 So.2d 18, 21-22 (Miss. 1988); Jones By Jones v. Harris, 460 So.2d 120, 122 (Miss. 1984); Clark v. State ex rel. Mississippi State Medical Association, 381 So.2d 1046, 1048 (Miss. 1980); Genesco, Inc. v. J.C. Penney Co., Inc., 313 So.2d 20, 24 (Miss. 1975); McCaffrey's Food Market, Inc. v. Mississippi Milk Commission, 227 So.2d 459, 462 (Miss. 1969). The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. See, e.g., Mississippi Power Co. v. Goudy, 459 So.2d 257, 263, 274 (Miss. 1984); Anderson v. Fred Wagner & Roy Anderson, Jr., Inc., 402 So.2d 320, 321 (Miss. 1981); Clark v. State ex rel. Mississippi State Medical Association, 381 So.2d 1046, 1048 (Miss. 1980); McCardle v. City of Jackson, 260 So.2d 482, 483 (Miss. 1972); City of Jackson v. Lee, 252 So.2d 897, 898 (Miss. 1971); Russell Investment Corp. v. Russell, 182 Miss. 385, 419, 182 So. 102, 107 (1938); Miller v. State, 130 Miss. 564, 585, 94 So. 706, 709 (1923). When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we. These thoughts before us, we return to Roy's thesis.
Roy hangs his hat on Section 159(d) which vests in the chancery court "full jurisdiction" in cases concerning "minor's business" and calls our attention to Wheeler v. Shoemake, 213 Miss. 374, 57 So.2d 267 (1952). Wheeler upheld the Youth Court Act of 1946 and particularly the Youth Court's authority to hear a case of a seventeen year old accused of grand larceny, against a challenge that the act infringed the jurisdiction vested in the circuit court by Miss.Const. Art. 6, § 156 (1890). It is true that, after holding both the police power and Section 172 provided the youth courts firm constitutional grounding, Wheeler, 213 Miss. at 398-408, 57 So.2d at 278-83, the Court offered lagniappe "an additional reason why the act is valid... . The chancery court is given `full' jurisdiction over `minor's business,'" Wheeler, 213 Miss. at 413, 57 So.2d at 285, the particular youth court there involved being that of Covington County and a division of the Chancery Court of that county. But nothing in Wheeler suggests any constitutional infirmity in the jurisdiction of those youth courts in counties having county courts where the youth courts are made divisions thereof. In a sense our youth courts are neither superior, equal to, or inferior to other "inferior" courts  they are special courts due to the special nature of their function.
If we perceive Roy's point, it goes not so much to the youth court's jurisdiction ab initio as to this court's jurisdiction to hear a direct appeal, Roy apparently preferring that the appeal go to chancery court, thus *697 establishing the youth court's inferiority. The social imperative for prompt disposition of matters affecting children is sufficiently within the police power  as read broadly in Wheeler  that the legislature may streamline the appellate process as it has done in the present act.

V.
Roy appeals the Youth Court's denial of his plea of res judicata. His point is without merit, but it requires a touch of background and explanation.
December of 1988 and January of 1989 saw parallel proceedings regarding T.L.C.'s custody in the Chancery Court of Washington County and in the Youth Court of Washington County. For a time the two courts appear to have been unaware of each other's litigations. The Chancery Court heard Teresa's claim that Roy had abused T.L.C. and on January 9, 1989, rejected it, in part because the Court considered itself precluded by the physician-patient privilege from considering certain hospital records regarding T.L.C.'s examination and condition in mid-December, 1988.
On February 3, 1989, prior to entry of final judgment, the Chancery Court reconsidered the matter, held that it had erred in its ruling excluding the hospital records, and thus vacated its prior ruling. The Court further announced that it was remanding the matter "to the chancery docket until such time as the Youth Court of Washington County, Mississippi, has completed its proceedings with reference to the subject child... ."
Back to Roy's claim, which is that the Chancery Court's January 9 ruling should be given res judicata effect, precluding relitigation of Teresa's claim that Roy abused T.L.C. The quick answer is that only final judgments enjoy res judicata powers and the Chancery Court has entered no final judgment in the matter.[7]

VI.
Prior to the adjudicatory hearing, Roy moved for an order dismissing the petition on grounds certain time limitations were not met in the pre-hearing processes. Following the adjudicatory and dispositional hearings, Roy renewed the point, again to have the Youth Court overrule it.
Roy Cortesi argues that the ten-day time period contained in Miss. Code Ann. § 43-21-451 (1972) was violated when the petition was not "filed" until March 21, 1989. Further, Roy invokes the ninety-day requirement of Miss. Code Ann. § 43-21-551 (1972), within which an adjudicatory hearing must be held after the filing of a petition. If the youth court allows gross violations of § 43-21-451, the ten-day requirement, the ninety-day "speedy trial" rule is rendered a nullity, or so we are told. Roy cites In re Long, 184 So.2d 861 (Miss. 1966) and In re Edwards, 298 So.2d 703 (Miss. 1974) for the proposition that the time limits of the Youth Court Act are important and must be complied with by public officials.
Miss. Code Ann. § 43-21-451 (1972) states:
All proceedings seeking an adjudication that a child is a delinquent child, a child in need of supervision, or an abused child shall be initiated by the filing of a petition. Upon authorization of the youth court, the petition shall be drafted and filed by the youth court prosecutor unless the youth court has designated some other person to draft and file the petition. The petition shall be filed within five (5) days from the date of a detention hearing continuing custody. Unless another period of time is authorized by the youth court or its designee, in non-custody cases the petition shall be filed within ten (10) days of the court order authorizing the filing of a petition. The court may, in its discretion, dismiss the petition for failure to comply with the time schedule contained herein.
*698 The ninety-day requirement is found in Miss. Code Ann. § 43-21-551 (1972) which, in pertinent part, reads as follows:
(1) Unless the hearing is continued upon a showing of good cause or the person who is a subject of the cause has admitted the allegations of the petition, an adjudicatory hearing shall be held within ninety (90) days after the filing of the petition to determine whether there is legally sufficient evidence to find that the child is a delinquent child, a child in need of supervision, a neglected child or an abused child. If the adjudicatory hearing is not held within the ninety (90) days, the petition shall be dismissed with prejudice.
Preliminarily, we must decide when the petition was "filed". The record yields two possible answers: (1) January 23, 1989  when the youth court prosecutor handed the petition to the youth court clerk; and (2) March 21, 1989  when the petition was "filed" by the circuit clerk.
The Youth Court Act contemplates the existence of a youth court clerk. See Miss. Code Ann. § 43-21-251 (1972) (records of youth court shall include docket kept by clerk of youth court); Miss. Code Ann. § 43-21-501 (1972) (clerk of youth court to issue summons); Miss. Code Ann. § 43-21-651 (1972) (written notice of intention to appeal to be filed with clerk of youth court). A petition is deemed "filed" when delivered to that office, with no necessity of filing in the circuit clerk's office.
The Mississippi Rules of Civil Procedure[8] reinforce the point. Rule 5(e), Miss. R.Civ.P., provides that papers are filed "by filing them with the clerk of the court." The Youth Court Clerk is the clerk of the youth court. We hold the petition "filed" on January 23, 1989, when delivered to the clerk of the youth court, as there is no conflict between Rule 5(e) and any provision of the Youth Court Act.
To be sure, this Court has recognized the ninety-day requirement of § 43-21-551 as embodying a "speedy trial" rule, see In re W.R.A., 481 So.2d 280, 283-84 (Miss. 1985). Having fixed the date of filing of the petition on January 23, simple mathematical calculation reveals that the ninety-day provision of § 43-21-551 was complied with. The adjudicatory hearing commenced April 20, 1989  eighty-seven days after the petition was filed. This, however, leaves the issue of the filing time requirement of § 43-21-451 to be resolved. We assume the ten days began to run on December 16, 1988, the date of the shelter hearing.
While the ninety-day requirement is stated in the mandatory "shall", one finds crystal clear that dismissal by the youth court for failure to file within the required period after authorization to file the petition is discretionary. The statute reads:
The Court may, in its discretion, dismiss the petition for failure to comply with the time schedule contained herein.
The issue thus becomes one of whether the youth court abused its discretion in not dismissing the petition for failure to comply with the ten-day time requirement. The most prominent reasons given by the youth court for not dismissing the petition were that it would not be in the best interest of the child and the tremendous case-load of the Youth Court. Balanced against these considerations are Roy Cortesi's failure to demonstrate any prejudice that resulted from the twenty-six day delay and his failure to make any inquiry concerning the case from December 16, the date of the shelter hearing, until February 10, 1989, when he first wrote to Washington County DHS. On these facts, we are not about to hold the Youth Court abused its discretion in not dismissing the petition.

*699 VII.
Roy charges that the Youth Court erred in that it never advised him, prior to the adjudicatory and dispositional hearings, of certain rights contemplated by statute. He relies first on Miss. Code Ann. § 43-21-557 (1972), which provides in pertinent part:
(1) At the beginning of each adjudicatory hearing, the youth court shall:
(d) explain to the parties the purpose of the hearing and the possible disposition alternatives thereof; and
(e) explain to the parties:
(i) the right to counsel;
(ii) the right to remain silent;
(iii) the right to subpoena witnesses;
(iv) the right to cross-examine witnesses testifying against him; and
(v) the right to appeal.
With respect to the dispositional hearing, Roy relies on Miss. Code Ann. § 43-21-603 (Supp. 1989), which provides in pertinent part:
1) At the beginning of each disposition hearing, the judge shall inform the parties of the purpose of the hearing.
Roy argues that these provisions are mandatory and that the Court's failure to follow the statutorily mandated procedure requires reversal, and in support he cites In re I.G., 467 So.2d 920 (Miss. 1985) and In re Long, 184 So.2d 861 (Miss. 1966).
In re I.G., 467 So.2d 920 (Miss. 1985) concerns the failure of the youth court to inform the parents of their right to counsel and inquire whether they were represented by counsel. In reversing the adjudication that the children were educationally neglected, the Court relied on three cases where the issue was delinquency and the parties had not been informed of their right to counsel. In re I.G., 467 So.2d at 922 (citing In re Way, 319 So.2d 651 (Miss. 1975); In re Ferguson, 317 So.2d 899 (Miss. 1975); and In re Long, 184 So.2d 861 (Miss. 1966)). The Court indicated that the harm suffered by the parents was that they did not know of their right to appeal the adjudication and they were not aware that there existed other grounds than serious illness which would provide excuse for the children's non-attendance of school. In re I.G., 467 So.2d at 922.
In the case sub judice, Roy Cortesi was, in fact, ably represented by counsel during both the adjudicatory and disposition hearings. Roy Cortesi, through his counsel, vigorously cross-examined the witnesses called by the youth court prosecutor and gave closing argument. As well, Roy Cortesi, through counsel, was heard on all pretrial objections to jurisdiction and other points as well.
While conscientious practice counsels that the youth court follow the procedure concerning notification of parties' rights, in this case Roy Cortesi can point to no denial of any right that would make the hearings any less than fair. The error, if any, is harmless.

VIII.
Prior to the adjudicatory hearing, Roy filed in the Youth Court three separate motions for continuance. In the first he sought time within which to obtain the transcript of the testimony of Joan Weisinger, the DHS social worker who initially investigated the abuse report. Roy also asked time to obtain pictures showing the bruises of T.L.C. Finally, he asked for a continuance pending his efforts to convince the Chancery Court of Washington County to reclaim jurisdiction.
In Youth Court, as elsewhere, requests for continuance are addressed to the sound discretion of the Court, except that in Youth Court more so than almost any other we accept an imperative that the Court proceed with the matter as promptly as may fairly be done. Leonard v. Leonard, 486 So.2d 1240, 1241 (Miss. 1986); Red Enterprises, Inc. v. Peashooter, Inc., 455 So.2d 793, 796 (Miss. 1984); Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690, 692 (Miss. 1983); Rogers v. Rogers, 290 So.2d 631, 634-35 (Miss. 1974); F.B. Walker & Sons, Inc. v. Rose, 223 Miss. 494, 505, 78 So.2d 592, 594 (1955). This Court will not reverse the youth court in exercising its discretion in these cases unless that court abused that discretion and the Court is *700 convinced that injustice will result therefrom. Croft v. Bituminous Casualty Corp., 235 Miss. 95, 98-99, 108 So.2d 700, 701-02 (1959); Roberson v. Quave, 211 Miss. 398, 400, 51 So.2d 62, 63 (1951).
The record reflects that this matter was originally scheduled for hearing on April 5, 1989, and that at Roy's request it was continued until April 20, 1989. Without more, we hold that the Youth Court did not err when it denied Roy's three separate requests for a second continuance.

IX.
Roy challenges admissibility of the opinion testimony of Patricia Dubard, the emergency room nurse serving at the Delta Medical Center at the time Roy brought T.L.C. in for treatment and care on December 13, 1988.
Dubard described the bruises she observed on T.L.C., explained how the coloration of the bruises was an indicator of their age, and related the rationale she uses in judging whether bruises warrant her notifying the Department of Public Welfare. Dubard was then asked:
Given your experience and your background working in the Trauma Center, and given the location of the bruises  the coloration of the bruises, as you have identified them  do you have an opinion, to a reasonable medical certainty, as to whether or not these bruises are consistent with a fall.
To which she responded, "In my opinion they were not."
Counsel for Roy Cortesi objected to the opinion on the grounds, apparently, that Dubard did not have sufficient personal knowledge to form such an opinion. This was because she had only observed T.L.C. for a short time and could not remember having questioned Roy Cortesi about the origins of the bruises.
We note that then, following the said-to-be-offensive question and answer, Dubard was asked:
Do you have an opinion, Ms. Dubard, given your education and experience, to a reasonable medical certainty as to the origin of these bruises as you have described them on this child, TLC?
Her response was as follows:
An opinion as to the origin? I can't. I wasn't there when they occurred. I cannot give an opinion as to how they were there. I just know what I saw, what color they were, and they were new and old bruises. And that's really all I can say.
Traditionally rules of evidence have been relaxed in youth court proceedings. By express provision, the Mississippi Rules of Evidence are not in force. Rule 1101(b)(3), Miss.R.Ev. Our law requires only that youth court rules of evidence "comply with applicable constitutional standards," Miss. Code Ann. § 43-21-203(4) (1972), none of which are implicated here.
In the case sub judice, Roy made no objection to Dubard's competence as an expert witness, given her training and experience as an emergency room nurse. There is ample evidence that Dubard had personal knowledge of the bruises to T.L.C. From this knowledge she was competent to give an opinion that the bruises were not consistent with TLC having fallen. The abuse/neglect report was also entered into evidence  to which no objection was raised  and Dubard could, being an expert, render her opinion that the bruises were not consistent with the reason given in the report, i.e., frequent falling.
Dubard clearly possessed personal knowledge of the bruises and, as an expert, could testify, based on her abuse report, though she had no independent recollection, that in her opinion the bruises were not consistent with the explanation provided by Roy Cortesi, i.e., frequent falling. Dubard's credibility did not go to the issue of admissibility of her testimony, but to the weight to be given it by the trier of fact. Given the relaxed rules of evidence in force in youth court proceedings, we hold Roy's present point without merit.

X.
Roy argues that the Youth Court erred when it found that T.L.C. had been abused while in his custody. We regard *701 this a challenge to the sufficiency of the evidence to support the adjudicatory and dispositional orders.
In Collins v. Lowndes County Public Welfare Department, 555 So.2d 71 (Miss. 1989) we articulated  in familiar terms  our limited scope of review when such a question is presented.
[1] When a Youth Court makes an adjudication of neglect, this Court considers all the evidence before the Youth Court in the light most favorable to the State. In Interest of M.R.L., 488 So.2d 788, 791 (Miss. 1986). If the evidence so considered is opposed to the finding of the Youth Court with such force that "reasonable men" could not have found as the Youth Court did by a preponderance of the evidence, this Court must reverse. The evidence at trial was such that a reasonable person could have found as the youth court did thus the granting of temporary custody was not in error. In Interest of M.R.L., 488 So.2d 788 (Miss. 1986).
Collins, 555 So.2d at 72. Considering the evidence in the record before us, we find it legally adequate that to undergird the adjudication and disposition here assailed.

XI.
Incident to this appeal, Roy Cortesi challenges the fee the official court reporter has charged him for transcription of the proceedings in Youth Court. Roy asserts that Miss. Code Ann. § 9-13-33 (Supp. 1989) applies to limit the amount the official court reporter may charge to $2.00 per page of the transcript. The transcript in this case was 104 pages, but the court reporter required a deposit of $400. None of the $400 was refunded to Roy upon completion of the transcript. In correspondence attached to the motion filed with this Court, the Youth Court Judge unambiguously declared that it is his position that § 9-13-33 does not apply because Roy Cortesi was not a party to the proceedings, only the child.[9] Thus, the court reporter may charge "whatever the traffic will bear when a person other than a litigant wishes to obtain a transcript of her work product."
Section 9-13-33 does not in any way limit its application such that appeals from youth court would be outside its coverage. In light of our conclusion that Roy Cortesi is, indeed, a party to the proceedings, see Part III(A), supra, we find Roy's point well taken and order that the court reporter refund to him any sums Roy has deposited or paid in excess of the fees allowable under Section 9-13-33.

XII.
Roy presents several additional points sufficiently devoid of merit that they require neither discussion nor reversal. Suffice it to say that we have considered Roy Cortesi's appeal with considerable care and at great length and find it without merit, with the limited exception of the matter of the court reporter's fees mentioned in Part XI above.
AFFIRMED; MOTION OF NICK CRAWFORD, GUARDIAN AD LITEM, AND VERNITA JOHNSON, YOUTH COURT PROSECUTOR, TO DISMISS APPEAL DENIED; MOTION OF WASHINGTON COUNTY DEPARTMENT OF HUMAN SERVICES TO BE DISMISSED AS PARTY TO APPEAL DENIED; MOTION FOR ATTORNEY FEES DENIED; MOTION OF ROY CORTESI FOR REFUND OF FEES CHARGED BY COURT REPORTER GRANTED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] On April 19, 1989, Teresa married Tony Cortesi, the nephew of Roy Cortesi.
[2] Further proceedings have been had in the Chancery Court regarding the custody of T.L.C. and these are subject of an appeal before this Court in Cortesi v. Cortesi, 566 So.2d 702 (Miss. 1990), on this Court's docket. Contemporaneous herewith we enter our Order dismissing that appeal.
[3] At the time this agency was known as the Washington County Department of Public Welfare. On July 1, 1989, the Department of Human Services succeeded to the duties and responsibilities of the Department of Public Welfare on both state-wide and county levels. See Miss. Laws ch. 544, §§ 61 et seq. (1989), codified as Miss. Code Ann. §§ 43-1-1, et seq. (Supp. 1989).
[4] See supra, note 2.
[5] It appears that under the previous six-month custody arrangement approved in the Chancery Court, Roy was supposed to have surrendered custody in early December of 1988.
[6] In the case at bar, DHS has filed a brief we have found most helpful.
[7] Nothing said here should be taken as suggesting that, had the Chancery Court's January 9 ruling been reduced to final judgment, we would consider that the other requisites of res judicata have been satisfied.
[8] Rule 81, Miss.R.Civ.P., provides that the Rules have limited applicability to youth court proceedings. The Rules are enforceable where they do not conflict with statutorily provided procedures. Cf. Pearson v. Parsons, 541 So.2d 447, 450 (Miss. 1989) (Rules of Civil Procedure applicable where not in conflict with statutory procedures regarding election contests); Mayoza v. Mayoza, 526 So.2d 547, 548-49 (Miss. 1988) (same as to divorce actions); Vining v. Mississippi State Bar Association, 508 So.2d 1047, 1048 (Miss. 1987) (same as to bar disciplinary actions); Gallagher v. Warden, 507 So.2d 27, 29 (Miss. 1987) (same as to will contests).
[9] Apparently the Youth Court Judge operated under this clearly false premise when ruling on Roy Cortesi's post-hearing motions as well.