IRVING, J.,
Dissenting.
¶ 25. With respect, I must dissent from the majority’s finding that the Youth Court of Jones County complied with the procedural requirements of Mississippi Code Annotated section 43-21-557 (2004) in adjudicating L.C.A. a delinquent child. I further dissent from the majority’s finding that the evidence was sufficient to support the court’s judgment of delinquency.
¶26. The record does not contain any evidence that the youth court complied with the dictates of section 43-21-557, as required by law, at the commencement of L.C.A.’s adjudicatory hearing on January 26, 2005.[4]
*308 ¶ 27. Prior to January 26, 2005, L.C.A. had two charges pending against him, one in Cause No. 60582-1 and one in 60582-2. The record reflects that both of these cause numbers were scheduled for adjudicatory hearing on January 5, 2005. However, on January 5, L.C.A. admitted the allegations in Cause No. 60582-1 but denied the allegations contained in Cause No. 60582-2. By a form order entered January 5, Cause No. 60582-2 was continued for adjudicatory hearing on January 26, 2005.[5]
¶ 28. In my view, the pivotal finding of the majority — that “the initial hearing was held on January 5, 2005, where the court complied with [section 43-21-557]” — enjoys no support in the record before this Court. As stated, the record does contain a form order signed January 5, 2005, by the youth court judge, wherein Cause No. 60582-2, the case that is before us in this appeal, was continued to January 26. In this form order, the court finds certain facts, the existence of which is a prerequisite to the court’s acceptance of the parties’ admission of the factual allegations contained in Cause No. 60582-1. The form order also finds a limited number of the conditions that section 43-21-557 re *309 quires must be explained or determined by the youth court judge “[a]t the beginning of each adjudicatory hearing.” However, it is clear that the form order was executed to comply with the requirements of Mississippi Annotated section 43-21-553 (Rev.2004)[6] rather than the requirements of section 43-21-557. We have no transcript of the hearing held on January 5. Therefore, the majority’s finding, that the trial court, at the January 5 hearing, complied with the procedural requirements of section 43-21-557, is perplexing.
¶ 29. At the beginning of the adjudicatory hearing from which this appeal emanates, the record reflects the following proceedings occurred:
THE COURT: L.C.A., Case Number 6058-1A and 6058-2. We are here today for a disposition in 6058-1A and an evidentiary hearing on 6058-2. Is the State ready?
MR. THOMPSON: Yes sir.
THE COURT: Is the juvenile ready?
MS. GRAHAM: Yes, sir.
THE COURT: Please come forward to be sworn in, Mr. Gavin.
[Thereafter, the evidentiary portion of the adjudicatory hearing began.]
The quoted passage demonstrates beyond doubt that the court failed to comply with the procedural requirements of section 43-21-557 when it commenced the adjudicatory hearing in Cause No. 6058-2. As already noted, we have no transcript of the January 5 hearing, but assuming the January 5 order reflects the scope of the discussion at the January 5 hearing, there is still no doubt that the procedural requirements of section 43-21-557 were not met. For example, there is nothing in the January 5 order indicating that the items enumerated in 43 — 21—557(l)(e)(ii) through (v) were explained to L.C.A.
¶ 30. In In the Interest of J.N., 915 So.2d 1076 (Miss.Ct.App.2005), we reversed the youth court for failing to follow the dictates of section 43-21-557. There, we held:
A child in youth court proceedings is entitled to certain due process rights that cannot be ignored. Sharp v. State, 127 So.2d 865, 869 240 Miss. 629, 638(1961). At the beginning of an adjudication hearing, the youth court must explain to the parties the purpose of the hearing, the possible disposition alternatives, the right to counsel, the right to remain silent, the right to subpoena witnesses, the right to cross-examine witnesses testifying against him, and the right to appeal. Miss.Code Ann. § 43-21-557 (Rev.2004); In re T.L.C., 566 So.2d 691, 699 (Miss.1990).
For these reasons, we find that this case should be reversed and remanded for further proceedings consistent with this opinion.
Id. at 1079-80 (¶¶ 15-16). We found that our decision was controlled by the supreme court decision of In re I.G., 467 So.2d 920 (Miss.1985). Id. at 1079(¶ 14).
*310 ¶ 31. The majority dismisses the importance of our holding in In the Interest of J.N. by citing to the supreme court holding in In re T.L.C., 566 So.2d 691, 699 (Miss.1990). The majority is correct that in In re T.L.C., the Mississippi Supreme Court held that the failure of the youth court to follow the dictates of section 43-21-557 was harmless error. However, it should be noted that In re T.L.C. is distinguishable from our case in that In re T.L.C. involved the failure of the youth court to advise the father of the minor child, where the issue was abuse of the father, while our case involves the failure of the youth court to advise the youthful defendant, where the issue is delinquency. In delinquency cases, the juvenile defendant runs the risk of being committed to a training school, while in abuse cases, the minor child may be removed from the home, but the parent does not risk being sent to jail. Further, in In re T.L.C., the Mississippi Supreme Court did not overrule In re I.G. and specifically noted that In re I.G. relied on three delinquency cases as support for its holding. In Re T.L.C., 566 So.2d at 699. Therefore, In re I.G. remains good law.
¶ 32. I now turn to L.C.A.’s second issue, the insufficiency of the evidence to support the adjudication that he committed the delinquent act of disorderly conduct. The gravamen of the petition against L.C.A. charged: L.C.A. “did purposefully, knowingly, and unlawfully commit the act of disorderly conduct: breach of peace in violation of [section] 97-35-3 of the Mississippi Code of 1972, annotated, against the peace and dignity of the State of Mississippi. L.C.A. behaved disorderly at the Pine Belt Alternative School, Laurel, MS, by calling Mr. Gavin a
¶ 33. The record reflects that the total evidence offered by the county prosecutor in support of the charge consisted of the brief testimony of two witnesses. The first witness, Gavin, testified as follows:
Q. Okay. Now, the disorderly conduct arose from the deputies coming out and picking him up;—
A. Yes, sir.
Q. —is that correct?
A. Yes, sir.
Q. Tell us what happened.
A. They were taking him [L.C.A.] to the car — had him in handcuffs and [L.C.A.] got upset and said the handcuffs were too tight. He tried to knee the sheriff in the groin section — the deputy. He just went to cussing, and I told him, you know, to have his mother call me before he comes back to school. And at that time, he call me a very ugly name.
Q. Now, that’s the basis of this petition today, is that his behavior was disorderly towards you and the school.
A. Yes, sir.
Q. Tell us what it was that he exactly said toward you.
A. He called me a m_f.
Q. And was that directed towards you?
A. Yes, sir.
Q. And where were you at when he called you that?
A. I was standing outside as he was getting in the [patrol] car.
¶ 34. The second witness, Knight, a security officer at Pine Belt Alternative School, testified as follows:
Q. Okay. Officer Knight, on or about November 3rd of ’04,1 believe there was — L.C.A. was being arrested or being picked up on a pick-up order there at the school; is that correct?
A. Yes, sir, that’s correct.
*311 Q. Tell us what happened in regard to any outburst he made while he was being picked up.
A. He had been arrested for disorderly conduct by Deputy Carroll Wind-ham. Myself, Mr. Gavin and Mr. Murphy were just sort of following them as they went out the door. He was — the deputy was taking him out to the patrol unit to transport him down here. All of a sudden, he just turned around, looked at Mr. Gavin and called him a m_f.
Q. What tone of voice did he use when he called him that?
A. A loud one. Shouted it back at him. And at that point, he even started resisting arrest and had to be physically controlled, even with cuffs on. And then he settled down, and we put him in the patrol car.
¶ 35. Mississippi Code Annotated section 97 — 35—3(l)(b) (Rev.2004), the code section which L.C.A. was charged with having violated, provides in pertinent part:
Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby:
$ ‡ ^ ‡
insults or makes rude or obscene remarks or gestures, or uses profane language, or physical acts, or indecent proposals to or toward another or others, or disturbs or obstructs or interferes with another or others,
* * * *
shall be guilty of disorderly conduct....
¶ 36. The pivotal inquiry is whether there was sufficient evidence to warrant a finding that L.C.A., while in handcuffs and being escorted by sheriff deputies, intended to provoke a breach of the peace when he uttered the infamous word or, if not, whether circumstances then existed under which a breach of the peace might have occurred. The majority spends little time addressing this crucial issue, finding that “[i]f such conduct was not with an intention to provoke a breach of the peace, then, certainly, a breach of the peace may have been occasioned thereby.” Majority opinion at (¶ 6). Respectfully, I cannot disagree more. It is more than a stretch to conclude that circumstances are ripe for a breach of the peace when the would-be instigator is being ushered in handcuffs to a patrol car by sheriff deputies. But more importantly, the petition filed against L.C.A., as any fair and reasonable reading of it reveals, charges that L.C.A. breached the peace and behaved disorderly by calling Gavin a m_The prosecution did not offer, and the record does not reveal, one scintilla of evidence that the peace was actually breached as a result of L.C.A.’s use of the “M” word, and, notwithstanding the charging language of the petition, calling another the “M” word, without more, does not constitute disorderly conduct within the meaning of section 97-35-3.
¶ 37. It seems the majority tacitly concedes that there is no evidence to support a finding that L.C.A., by calling Mr. Gavin the “M” word, intended to provoke a breach of the peace. As I have already suggested, it is indeed contorted logic to conclude that the handcuffed juvenile who was being escorted by sheriff deputies intended to provoke a breach of the peace unless he assumed that the deputies and Gavin would lose their composure and attack him. It is further contorted logic to assume that L.C.A. wanted to be physically assaulted or thought that a school official and a sheriff deputy, who were both by virtue of their positions required to protect him, would attack him. Therefore, as demonstrated, a fair analysis of the evidence compels the inescapable conclusion *312 that the evidence was insufficient to support a finding that L.C.A. intended to provoke a breach of the peace when he called Mr. Gavin the “M” word. Likewise, based on the same reasoning and analysis just employed, I cannot agree that the evidence was sufficient to support a finding that the circumstances were such that a breach of the peace may have been occasioned by L.C.A.’s use of the “M” word. To conclude that, under the factual circumstances presented, a breach of the peace may have occurred is to conclude that law enforcement and school officials are likely to physically attack a student who verbally insults them, even if the student is handcuffed and under the physical control of a law enforcement official at the time of the verbal insult by the student.
¶ 38. While I find the evidence insufficient to support a finding that all of the elements of the crime of disorderly conduct were proved in this case, I hasten to add that I do not condone L.C.A.’s action. In fact, I believe the proof was sufficient to find that L.C.A. committed the delinquent act of public profanity within the meaning of Mississippi Code Annotated section 97-29^17 (2000) which prohibits cursing or the use of vulgar and indecent language in the presence of two or more persons. Had the petition charged L.C.A. with a violation of this section, I would affirm.
¶ 39. For the reasons presented, I dissent and would reverse and render.
KING, C.J., AND BARNES, J., JOIN THIS OPINION.

. Section 43-21-557 reads in part:
(1) At the beginning of each adjudicatory hearing, the youth court shall:
(a) verify the name, age and residence of the child who is the subject of the cause and ascertain the relationship of the parties, each to the other;
(b) ascertain whether all necessary parties are present and identify all persons participating in the hearing;
*308 (c) ascertain whether the notice requirements have been complied with and, if not, whether the affected parties intelligently waived compliance in accordance with Section 43-21-507;
(d) explain to the parties the purpose of the hearing and the possible dispositional alternatives thereof; and
(e) explain to the parties:
(i) the right to counsel;
(ii) the right to remain silent;
(iii) the right to subpoena witnesses;
(iv) the right to cross-examine witnesses testifying against him; and
(v) the right to appeal.
(2) The youth court should then ascertain whether the parties before the youth court are represented by counsel. If a party before the youth court is not represented by counsel, the youth court shall ascertain whether the party understands his right to counsel. If the party wishes to retain counsel, the youth court shall continue the hearing for a reasonable time to allow the party to obtain and consult with counsel of his choosing. If an indigent child does not have counsel, the youth court shall appoint counsel to represent the child and shall continue the hearing for a reasonable time to allow the child to consult with his appointed counsel.

. The order reads in pertinent part:
Came on this day for adjudicatory hearing on the petition filed by the county prosecutor in this matter, and the Court finds and orders.
1.That the Court declares the minor child indigent and Honorable Dan Henson and/or Honorable Billie Graham are appointed as Youth Court Public Defenders to represent the minor child; that Honorable Billie Graham is appointed to represent the child for the purpose of this hearing, and said child is represented by competent counsel and has had sufficient time to prepare for this hearing; and said minor child has been properly served with process.
2. That all necessary parties are before the Court and the parent/guardian/custodian R.A, waives formal service of process and enters appearance in this hearing voluntarily, who the Court finds had legal custody at the time of this alleged offense; that all parties waive the right to have any hearing in this matter in the Second Judicial District of Jones County, Mississippi.
3. That the parties present, including the minor child and parent/guardian/custodian, fully understand their rights and the potential consequences of the hearing, as well as admission, and the dispositional alternatives available to the Court.
4. That the child having heard reading of the allegations in the petition said minor child denied Count I Cause No. 6058-2 and admitted Count I Cause No. 6058-1 and is hereby adjudicated CHIN
IT IS ORDERED THAT Cause 6058-2 is set this day in open Court for evidentiary hearing as to Count No. 1. on the 26 day of January 2005 at 9:00 a.m. and minor and parent are ordered to appear on said day and time; Cause No. 6058-1 is set for disposition on January 26, 2005 at 9:00 a.m.

. Section 43-21-553 reads in part:
At any time after the petition has been filed, all parties to the cause may appear before the judge and admit the allegations of the petition. The judge may accept this admission as proof of the allegations if the judge finds that:
(a)the parties making the admission fully understand their rights and fully understand the potential consequences of their admission to the allegations;
(b) the parties making the admission voluntarily, intelligently and knowingly admit to all facts necessary to constitute a basis for court action under this chapter;
(c) the parties making the admission have not in the reported admission to the allegation set forth facts that, if found to be true, constitute a defense to the allegation; and
(d) the child making the admission is effectively represented by counsel.