IRVING, J.,
DISSENTING:
¶ 20. The majority finds no infirmity in the proceedings below and affirms the trial court’s finding of delinquency and commitment of K.G. to Columbia Training School. I cannot agree. The record in this case reveals, without a doubt, that K.G. did not get a fair and impartial hearing, and that the trial judge did not follow the mandatory statutory procedural safeguards before commencing the adjudicatory and disposi-tional hearings which resulted in K.G. being sentenced to the training school. Therefore, I dissent.
¶ 21. I will first discuss the statutory procedural guidelines for both the adjudicatory and dispositional hearings, which the youth court trial judge failed to follow. Then I will discuss the evidence and the trial judge’s predetermined disposition, which I believe require that the adjudication of delinquency be reversed and remanded.
¶ 22. The majority acknowledges that the trial judge failed to follow the order of proceedings for adjudicatory hearings as mandated by Mississippi Code Annotated section 43-21-557 (Rev.2004).[1] Neverthe *1056 less, relying on this Court’s decision in In re L.C.A., 938 So.2d 300 (Miss.Ct.App. 2006), the majority finds that this failure constitutes harmless error.
¶23. In In re L.C.A., this Court, relying upon In re T.L.C., 566 So.2d 691 (Miss.1990), did not specifically find that the youth court failed to follow the requirements of section 43-21-557. We found, however, that if any error occurred with respect to the procedure employed, it was harmless, as the youthful defendant was ably represented by a court-appointed public defender who did not complain about the youth court’s failure to follow the procedure dictated by section 43-21-557. In re L.C.A, 938 So.2d at 306 (¶¶ 18-19).
¶ 24. I dissented in In re L.C.A. and distinguished In re T.L.C. I will not repeat that discussion here except to say that, unlike In re T.L.C., this case involves a finding of delinquency, and I know of no Mississippi Supreme Court precedent holding that in delinquency adjudications, it is harmless error not to follow the procedural requirements of section 43-21-557. As the majority notes, the trial judge did not follow the procedural requirements of section 43-21-557, in that the trial judge failed to inform KG. of certain basic constitutional rights. To be clear, the record reflects that the trial judge did not explain to K.G. or her mother any dispositional alternatives or the rights specified in section 43-21-557. The trial judge began the adjudicatory hearing after only ascertaining the presence of K.G., her mother, and the victim. This is wholly unacceptable. Surely, the legislature intended to afford certain rights and safeguards to youthful defendants, such as are set forth in section 43-21-557. I will not lend my voice or authority of office to judicially annihilate what the legislature, in its wisdom and thoughtful deliberations, determined should take place in our youth courts before a youthful defendant is adjudicated a delinquent and incarcerated in one of our training schools.
¶ 25. I now turn to a discussion of the evidence adduced during the adjudicatory phase of the proceedings. During this phase, the State offered only one witness, the teacher victim. Immediately after the victim related, during direct examination, her story as to what happened, the trial judge interrupted the proceedings:
THE COURT: I’ve heard enough to find that this child is a delinquent child in this. By further examination on Mr. Clark’s part that it could be offset [sic]. You can tender this witness for cross-examination at this point. You may proceed, Mr. Clark.
MR. CLARK: I would like to call Ms.—
THE COURT: You can cross-examine her if you like. I’m not saying that you have to, but you can start right now with cross-examination to offset my findings *1057 of delinquency at this point unless it is offset.
Before the court’s interruption, the victim had testified that K.G. turned over a desk-chair and pushed it toward her, causing her to trip and fall sideways onto the floor. During cross-examination, the victim acknowledged that she did not know if K.G. was trying to trip her, but thought that K.G. was certainly trying to prevent her from calling anyone to report what KG. had done.
¶ 26. Upon the conclusion of the adjudicatory hearing, the trial judge immediately commenced the dispositional hearing without first informing the parties of the purpose of the hearing as mandated by section 43-21-603 (Rev.2004).[2] But more importantly, the trial judge entered the disposition order without first considering the factors specified in subsection (3) of section 43-21-603. Had the trial judge thoughtfully considered the referenced factors, it would seem rather improbable that he could arrive at the disposition that he did.
¶27. In support of this point, and to give a clear picture of KG.’s situation, I set forth in great detail the testimony given during the dispositional hearing, starting with KG.’s mother:
Q. Ms. Z.G., you have heard the testimony here today, do you believe that it’s in the best interest of your daughter for her to go to training school?
A. No.
Q. You’ve heard the testimony of [the victim] when she stated that she is very disrespectful of you. Do you have any problems with your daughter at home?
A. No.
Q. Have [sic] your daughter been diagnosed with a medical condition?
A. Yes.
Q. What medical conditions have [sic] she been diagnosed with?
A. Attention Deficit Disorder. She was put on medication for about five years or more.
Q. She’s been on—
A. She’s had counseling. She’s seeing a psychiatrist—
Q. Psychiatrist and a psychologist?
A. Yes. Every month—
THE COURT: Every once in a while—
*1058 THE WITNESS: No, I said every month we go to Ridgeland to their clinic, and visit the social worker. Then this two for one help is working with her and my son. And one was just at the house yesterday, a social worker came by to see me.
THE COURT: How long has she been having that psychological evaluation help that you’ve talking about? How long has that been going on?
THE WITNESS: At least four or five years.
THE COURT: Okay. That’s not cutting the mustard. Four or five years, and she still throws a desk — or pushes a desk on the teacher and injured the teacher. Her acute attitude at the school — She’s not getting the help that she needs where she is now. It’s not working.
THE WITNESS: She didn’t take her medication that day—
THE COURT: It’s not working. So what else. Mr. Clark?
BY MR. CLARK: (Attorney for defendant)
Q. Ms. Z.G., on this day, she had been prescribed medication, right? And was she on medication for the time that this incident took place?
A. Yes, but I also had someone to stay with her. My husband had a stroke and I was at the hospital with him, and I had someone watching her that day. Most of the time. She had been staying with family members, because my husband had a stroke at the time of this.
Q. So, it is possible that during this time this incident happened, she was not taking her medication because of the fact that your husband was ill and you weren’t there to make sure those medications were taken?
A. When she takes this medicine, she’s a better person. She’s more controlled. And I must say, the only reason she was outside the class was because she was able — I asked [the victim] was she able to keep up or did she want her back in the class, and [the victim] agreed that she didn’t want her back in the classroom. They wouldn’t put her back in there.
Q. On which occasion are we talking about?
A. After—
Q. After this incident?
A. Uh-huh. (Affirmative response.)
Q. Did she go back to [the victim’s] class after this incident?
A. No.
MS. HUNTER:[3] What is the reason for the (inaudible) teacher support the counselors there on hand.
A. Ms. Leach is the counselor, and Ms. (inaudible.)
MS. HUNTER: (Inaudible.)
A. And it’s one more that works there. She was like (inaudible.)
MS. HUNTER: Were they doing a lot of interventions at the school?
A. Yes, and coming to my house.
THE COURT: How long have they been intervening at the school on the child with psychiatric help?
A. They had just come in.
THE COURT: What period of time?
A. It just started in August. He was brought in, and the lady that was there before Ms. Leach was Ms. (Inaudible) And she just came in, you know, last — the second semester I think when she came and started these treatments (Inaudible.) But *1059 she’s not there and Ms. Leach just took over.
THE COURT: Who?
A. Ms. Leach. She just took over about April.
THE COURT: What’s her private title? What’s her credentials? Ms. Leach, what is she a psychiatrist?
A. She a[sic] social worker.
THE COURT: She’s a what?
A. A social worker.
THE COURT: Social worker. Is she a psychiatrist?
A. She’s a—
THE COURT: Who is the psychiatrist that’s working with this child right now?
A. Dr. Gutlett. He’s from Ridgeland Clinic.
THE COURT: And how long has he been working with your child?
A. About a — almost a year and a half.
THE COURT: See, that’s not getting it for some reason. I’m looking at this — -I’ll look at an alternative to training school provided it’s a deep psychiatric care if that’s what she needs, but if it’s just an old attitude problem, then that can be dealt with by going to training school.
BY MR. CLARK:
Q. Ms. Z.G., has K.G. ever been before the Youth Court prior to this incident?
A. No.
Q. So this is the first time she’s ever been before Youth Court?
A. Yes.
MR. CLARK: May it please the Court, on behalf of Ms. K.G., I’m going to recommend probation. This is the first incident that she has had before the Youth Court, and we should defer to restricted means in terms of correcting behavior of other youth and probation should be given a chance to correct that probation with the continued psychological work, she should be given a chance being on probation and correcting her behavior with her knowing that she’s on probation.
MR. GILMORE: We had her brother in here, I think what two weeks ago or what?
MS. HUNTER: About two weeks ago.
MR. GILMORE: And we put him on those guidelines and was supposed to report back in two months.
MS. HUNTER: Yes.
MR. GILMORE: (Inaudible.)
MR. CLARK: (Inaudible.)
MS. HUNTER: (Inaudible.)
THE COURT: If y’all don’t have anything else, then let me make a ruling.
MR. GILMORE: He did appear to have a problem, but now he’s going to the same people that she’s describe [sic] that she’s going to now. I don’t know whether it’s—
THE COURT: Well, I’m not having any confidence in what they’re doing. I’m not faulting them. What I’m saying is what she’s been going through is not working — If it is, then she wouldn’t have assaulted this teacher. She assaulted that teacher right there. That desk didn’t just jump up and run over there and this lady’s way, when all she’s trying to do is to chair her class and fulfill her responsibilities. She ought not have to open her mouth with nothing but sit down, be quiet, I’m going to go hit this button for somebody to come down there and help me. And anything that they take beyond that is clear violation of the law, and it’s a clear delinquency; and it’s as clear (inaudible).
So, I’m going to go ahead with the Order of the Court being that — Did *1060 you want her to testify for any reason? I’ll reopen that so I can — I’m just asking the question now.
MR. CLARK: I—
THE COURT: I’m not saying she should. I’m just asking the question.
MR. CLARK: (Inaudible.)
[THE VICTIM]: I would like to know why K.G. acts like that with me?
THE COURT: Well, I don’t know that I know, but I know it happened, ma’am, and so — What do you want?
¶ 28. It seems rather obvious from the extensive colloquy between the trial court and K.G.’s mother that the trial judge had already made up his mind that the only disposition was confinement in the training school. Further, it is strikingly obvious that the trial judge did not consider any of the factors set forth in section 43-21-603, subsection (3). For these reasons, I dissent. I would reverse and remand this case for further proceedings consistent with the statutory procedural requirements and guidelines set forth in sections 43-21-557 and 43-21-603.
KING, C.J., AND CHANDLER, J„ JOIN THIS SEPARATE WRITTEN OPINION.

. This section reads in pertinent part as follows:
(1) At the beginning of each adjudicatory hearing, the youth court shall:
*1056 (a) verify the name, age and residence of the child who is the subject of the cause and ascertain the relationship of the parties, each to the other;
(b) ascertain whether all necessary parties are present and identify all persons participating in the hearing;
(c) ascertain whether the notice requirements have been complied with and, if not, whether the affected parties intelligently waived compliance in accordance with Section 43-21-507;
(d) explain to the parties the purpose of the hearing and the possible dispositional alternatives thereof; and
(e) explain to the parties:
(i) the right to counsel;
(ii) the right to remain silent;
(iii) the right to subpoena witnesses;
(iv) the right to cross-examine witnesses testifying against him; and
(v) the right to appeal.

. (1) At the beginning of each disposition hearing, the judge shall inform the parties of the purpose of the hearing.
(2) All testimony shall be under oath unless waived by all parties and may be in narrative form. The court may consider any evidence that is material and relevant to the disposition of the cause, including hearsay and opinion evidence. At the conclusion of the evidence, the youth court shall give the parties an opportunity to present oral argument.
(3) If the child has been adjudicated a delinquent child, before entering a disposition order, the youth court should consider, among others, the following relevant factors:
(a) The nature of the offense;
(b) The manner in which the offense was committed;
(c) The nature and number of a child’s pri- or adjudicated offenses;
(d) The child’s need for care and assistance;
(e) The child’s current medical history, including medication and diagnosis;
(£) The child's mental health history, which may include, but not be limited to, the Massachusetts Youth Screening Instrument version 2 (MAYSI-2);
(g) The child's cumulative record from the last school of record, including special education records, if applicable;
(h) Recommendation from the school of record based on areas of remediation needed;
(i) Disciplinary records from the school of record; and
(j) Records of disciplinary actions outside of the school setting.

. Ms. Hunter is the Youth Court Services Counselor.