938 So.2d 300 (2006)
In the Interest of L.C.A., a Minor.
No. 2005-CA-00242-COA.
Court of Appeals of Mississippi.
September 5, 2006.
*302 Charles E. Lawrence, attorney for appellant.
Michael Wayne Thompson, attorney for appellee.
EN BANC.
ROBERTS, J., for the Court.
¶ 1. On January 26, 2005, the Jones County Youth Court found that L.C.A. qualified as a delinquent child.[1] Later that same day, the court held a disposition hearing and placed L.C.A. in the custody of the Mississippi Department of Human Services  Youth Services for placement at a training school. Aggrieved, L.C.A. appeals and raises three issues, listed verbatim:
I. WHETHER OR NOT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT L.C.A. COMMITTED A DELINQUENT ACT AS REQUIRED BY MISSISSIPPI CODE ANNOTATED § 43-21-561.
II. WHETHER OR NOT THE COURT ERRED IN FAILING TO ADVISE L.C.A. AND HIS MOTHER AT THE BEGINNING OF THE ADJUDICATORY HEARING OF THOSE MATTERS TO WHICH THEY WERE REQUIRED TO BE INFORMED OF PURSUANT TO MISSISSIPPI CODE ANNOTATED § 43-21-557 AND BY FAILING TO COMPLY WITH THE REQUIREMENTS OF MISSISSIPPI CODE ANNOTATED § 43-21-601.
III. WHETHER OR NOT THE COURT CONSIDERED EVIDENCE IN REACHING ITS DECISION AFTER THE ADJUDICATORY HEARING THAT HAD NOT BEEN FORMALLY INTRODUCED INTO EVIDENCE.

FACTS
¶ 2. On November 3, 2004, L.C.A., a student at Pinebelt Alternative School in Laurel Mississippi, became disorderly and disturbed Mr. Matthew Mauldin's classroom. The Jones County Youth Court was contacted, and the judge issued a custody order to take L.C.A. into custody and have him placed in detention. Deputy Carroll Windham arrived to remove L.C.A. from the school and transport him to the juvenile detention center. As Deputy Windham removed L.C.A. from the school, L.C.A. became enraged and disorderly towards another teacher, Mr. Bart Gavin. L.C.A. shouted at Mr. Gavin and called Mr. Gavin a "m____ f____." Additionally, L.C.A. kneed Deputy Windham in the groin area as Deputy Windham attempted to place L.C.A. in the patrol car. Once he arrived at the detention center, L.C.A. tested positive for marijuana.[2] On December *303 15, 2004, a petition was filed in Jones County Youth Court that charged L.C.A. with disorderly conduct. On January 5, 2005, the youth court conducted an adjudicatory hearing during which L.C.A. denied the conduct. The youth court rescheduled the delinquency hearing for January 26, 2005.
¶ 3. At the scheduled delinquency hearing, Mr. Gavin, the teacher towards whom L.C.A. directed profanities, and Mr. Mackey Knight, the security officer at Pinebelt, each testified to L.C.A.'s conduct. They both testified that L.C.A. acted disorderly before he began to shout profanities. L.C.A. started resisting arrest, even though he was handcuffed, and he had to be physically controlled and placed into Deputy Windham's car.
¶ 4. L.C.A. testified in his defense. L.C.A. denied that he called Mr. Gavin a "m____ f____." Instead, L.C.A. testified that he said, "[t]his is a m____ f____ing shame" during the disturbance. L.C.A.'s mother testified in her son's defense. L.C.A.'s mother attributed L.C.A.'s behavior on the fact that he was sick. According to L.C.A.'s mother, antibiotics influenced L.C.A.'s behavior.
¶ 5. After hearing the evidence, the youth court found that L.C.A. qualified as a delinquent child.[3] The youth court judge conducted a disposition hearing after the adjudication hearing. The youth court judge considered L.C.A.'s adjudication as a delinquent child, as well as L.C.A.'s previous adjudication as a child in need of supervision, and committed L.C.A. to the Mississippi Department of Human Services  Youth Services for placement at a training school.

STANDARD OF REVIEW
¶ 6. Our standard of review in youth court cases is limited. In Interest of D.K.L., 652 So.2d 184, 189 (Miss.1995). We consider all the evidence presented to the youth court in the light most favorable to the State. Id. If the evidence is such that, beyond a reasonable doubt, reasonable men could not have reached the youth court's conclusion, we must reverse. Id. However, if the evidence in the record supports the youth court's adjudication, considering the reasonable doubt standard, then we must affirm. In Interest of I.G., 467 So.2d 920, 924 (Miss.1985).

I. WHETHER OR NOT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT L.C.A. COMMITTED A DELINQUENT ACT AS REQUIRED BY MISSISSIPPI CODE ANNOTATED § 43-21-561.
¶ 7. In his first issue, L.C.A. makes two arguments: (a) that he was unlawfully arrested, and (b) that the evidence was insufficient to adjudicate him as a delinquent child. We first address L.C.A.'s argument for unlawful arrest.
¶ 8. L.C.A. submits that the State never explained the nature of the conduct for which Deputy Windham responded to Pinebelt to remove L.C.A. from the school and then detain him. L.C.A. notes that the December 15, 2004 petition charged him with disorderly conduct incident to his behavior as Deputy Windham removed him from the school, rather than his behavior prior to his removal. That is, L.C.A.'s adjudication as a delinquent child did not originate from his behavior in class  it originated from his behavior as he was removed from class. Nevertheless, *304 L.C.A. concludes that he was arrested unlawfully. We disagree.
¶ 9. Under certain circumstances, a law enforcement officer may rely on probable cause to place a child into custody. A law enforcement officer may take a child into custody when the officer has probable cause to believe custody is necessary or when the officer can find no reasonable alternative to custody. Miss.Code Ann. § 43-21-303(1)(a) (Rev.2004). It is necessary to take a child into custody when a child's actions would endanger himself or others. Miss.Code Ann. § 43-21-301(3)(b) (Rev.2004). However, Deputy Windham did not respond based on independent probable cause. Deputy Windham responded incident to a youth court order. L.C.A. caused a disturbance in Mr. Matthew Mauldin's classroom significant enough to warrant contacting the youth court judge. The youth court judge issued a custody order and directed that Deputy Windham take L.C.A. into custody. We therefore do not find that L.C.A. was subjected to an unlawful arrest.
¶ 10. As mentioned, L.C.A. claims that his actions were not severe enough to qualify as a delinquent child. A delinquent child is a child over ten years old who has committed a delinquent act. Miss.Code Ann. § 43-21-105(i) (Rev.2004). An act qualifies as a delinquent act if that act would amount to a federal or state crime if committed by an adult. Miss.Code Ann. § 43-21-105(j) (Rev.2004). L.C.A., then sixteen years old, was charged with violating Mississippi's law that prohibits disorderly conduct, listed at Section 97-35-3 of the Mississippi Code. Pursuant to Section 97-35-3(1)(b):
Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby . . . insults or makes rude or obscene remarks or gestures, or uses profane language, or physical acts, or indecent proposals to or toward another or others, or disturbs or obstructs or interferes with another or others . . . shall be guilty of disorderly conduct.
According to our standard of review, we must assume that, as Deputy Windham removed L.C.A. from the school, L.C.A. struggled, acted belligerently, resisted arrest  even while wearing handcuffs, kneed Deputy Windham in the groin and called Mr. Gavin a "m____ f____." Even if we assumed that L.C.A. did not intend to provoke a breach of the peace with language profane enough to cause us to refrain from repeating it, there is no doubt that, under the circumstances, a breach could result from L.C.A.'s use of profane language. Bearing our standard of review in mind, we affirm the youth court's decision to adjudicate L.C.A. as a delinquent child.
¶ 11. The dissent reasons that "[i]t is more than a stretch to conclude that circumstances are ripe for a breach of the peace when the would-be instigator is a handcuffed sixteen-year old child being ushered in a patrol car by sheriff deputies." L.C.A.'s age has little bearing on whether a breach of the peace could occur under the circumstances. There is no evidence that, based on his age, L.C.A. could not have intended to provoke a breach of the peace. A reasonable fact finder, such as the judge in this case, could well conclude that L.C.A.'s conduct under the circumstances could likely lead to a breach of the peace. Compounded with the evidence that L.C.A.'s language could have occasioned a breach of the peace, we find no reversible error.
¶ 12. L.C.A. argues that educators have a duty to attempt to calm situations, rather than escalate them. It would certainly be unreasonable to allow educators to provoke escalated outbursts, but that is not *305 what occurred at Pinebelt that day. There is no evidence that Mr. Gavin or any other educator at Pinebelt escalated the situation. L.C.A. seems to suggest that educators should not only expect a student to exclaim profanities towards them as that student attempts to injure a law enforcement officer, L.C.A. also suggests that educators should calmly accept that behavior. However, L.C.A. provides no support for his illogical suggestion. L.C.A.'s conduct was unacceptable regardless of his child status. We find L.C.A.'s argument entirely meritless.

II. WHETHER OR NOT THE COURT ERRED IN FAILING TO ADVISE L.C.A. AND HIS MOTHER AT THE BEGINNING OF THE ADJUDICATORY HEARING OF THOSE MATTERS TO WHICH THEY WERE REQUIRED TO BE INFORMED OF PURSUANT TO MISSISSIPPI CODE ANNOTATED § 43-21-557 AND BY FAILING TO COMPLY WITH THE REQUIREMENTS OF MISSISSIPPI CODE ANNOTATED § 43-21-601.
¶ 13. In this issue, L.C.A. claims that the youth court failed to comply with Mississippi law when it did not advise him of all of his rights at the January 26, 2005 hearing. Section 43-21-557 of the Mississippi Code requires a youth court judge to inform an alleged juvenile offender of his rights. Miss.Code Ann. § 43-21-557 (Rev. 2004). Specifically, Section 43-21-557(1)(e) provides, "At the beginning of each adjudicatory hearing, the youth court shall . . . explain to the parties . . . (i) the right to counsel; (ii) the right to remain silent; (iii) the right to subpoena witnesses, (iv) the right to cross-examine witnesses testifying against him; and (v) the right to appeal."
¶ 14. The record indicates that the youth court conducted L.C.A.'s initial hearing on January 5, 2005. The record contains a copy of a summons that was served on L.C.A.'s mother. Among other things, that summons informed L.C.A.'s mother that L.C.A. had the right to be represented by counsel and the right to subpoena witnesses. The record also contains an order by which the youth court appointed counsel to represent L.C.A.
¶ 15. The dissent is of the opinion that the youth court committed reversible error because the record does not indicate that the youth court complied with Section 43-21-557 of the Mississippi Code. The dissent relies on In re J.N., 915 So.2d 1076 (Miss.Ct.App.2005). In that case, this Court found that the record contained no evidence that a youth court advised J.N.'s parents of the rights listed under Section 43-21-557(1)(d) and (e). Id. at (¶ 11). At the adjudication hearing, J.N. was represented by counsel, but J.N.'s attorney and J.N.'s parents admitted that J.N. stabbed another child in the chest. Id. In finding that reversible error resulted due to the youth court judge's failure to comply with Section 43-21-557, this Court relied on In re I.G., 467 So.2d 920 (Miss.1985). In re J.N., 915 So.2d at (¶ 14).
¶ 16. In In re I.G., a youth court judge interrogated I.G.'s parents, unrepresented by counsel, and never informed them of their rights to counsel or to remain silent. A citation for contempt against I.G.'s parents resulted from the youth court judge's interrogation. This Court noted that, in In re I.G., the record from the youth court hearing contained no evidence that the youth court met the procedural requirements of Section 43-21-557 in that the youth court did not inform I.G.'s parents that they had a right to counsel and the right to appeal the youth court determination. In re I.G. held that the youth court *306 has a mandatory duty to comply with Section 43-21-557 and that failure to comply necessitated reversal. Id.
¶ 17. In re J.N. discussed In re I.G. and then found that a youth court must explain the purpose of a hearing, dispositional alternatives, the fact that parties have a right to counsel, to remain silent, to subpoena witnesses, to cross-examine witnesses, and to appeal. In re J.N., 915 So.2d at (¶ 16) (citing Miss.Code Ann. § 43-21-557; In re T.L.C., 566 So.2d 691, 699 (Miss.1990)). Accordingly, In re I.G. and In re J.N. stand for the proposition that reversible error results where a youth court fails to comply with Section 43-21-557. However, other authority indicates that a youth court's failure to comply with Section 43-21-557 does not necessarily result in automatic reversal.
¶ 18. The dissent's authority for reversal, In re J.N., partially relied on In re T.L.C., 566 So.2d 691. In In re T.L.C., an appellant claimed that reversible error resulted where a youth court judge never advised him of the rights listed in Section 43-21-557. Id. In re T.L.C. discussed In re I.G.. Id. Unlike In re J.N.'s interpretation of In re I.G., the Mississippi Supreme Court held that "[w]hile conscientious practice counsels that the youth court follow the procedure concerning notification of parties' rights, [the appellant could] point to no denial of any right that would make the hearings any less than fair." Id. The supreme court found distinguishing facts in that the appellant in In re T.L.C. was represented by counsel and that his counsel "vigorously cross-examined the witnesses called by the youth court prosecutor." Id. Having found such, the supreme court held that, even if the youth court judge's failure to comply with Section 43-21-557 resulted in error, that error was harmless. Id.
¶ 19. Here, as in In re T.L.C., L.C.A. was represented by counsel. Dan Henson, one of the two youth court public defenders for the Jones County Youth Court, represented L.C.A. at both the January 5, 2005 hearing, as well as the January 26, 2005 hearing. We can presume with all justifiable confidence that an attorney appointed by the youth court judge as a public defender was familiar with the youth court law. There is no indication that L.C.A.'s trial counsel ever complained, at either hearing, of the youth court judge's failure to explain Section 43-21-577 to his client. L.C.A.'s counsel cross-examined witnesses and called witnesses on L.C.A.'s behalf in defense of the charge in the petition. L.C.A.'s appeal is presently before this Court, so L.C.A. certainly experienced no prejudice based on the youth court's failure to specifically inform L.C.A. that he had the right to appeal. The record contains no indication that L.C.A. was denied any right that rendered the youth court hearing unfair. In fact, at no point in his brief does L.C.A. indicate just how the youth court proceedings were somehow unfair or how he was prejudiced by the youth court's failure to comply with Section 43-21-557. As such, if any error resulted, it is harmless.
¶ 20. L.C.A. also argues that the youth court failed to comply with Mississippi Code Annotated § 43-21-601 (Rev. 2004) when it held a disposition hearing immediately after it adjudicated L.C.A. to be a delinquent child. However, Section 43-21-601 allows a youth court to conduct a disposition hearing immediately after an adjudicatory hearing unless a continuance is necessary. L.C.A. neither requested a continuance nor argued that a continuance was necessary. Accordingly, we find no merit to this issue.

*307 III. WHETHER OR NOT THE COURT CONSIDERED EVIDENCE IN REACHING ITS DECISION AFTER THE ADJUDICATORY HEARING THAT HAD NOT BEEN FORMALLY INTRODUCED INTO EVIDENCE.
¶ 21. Finally, L.C.A. argues that the youth court erred when it considered his prior adjudication as a child in need of supervision for marijuana use during the disposition hearing on January 26, 2005. However, in conducting a disposition hearing, a youth court should consider relevant factors including the nature and number of the child's prior adjudicated offenses. Miss.Code Ann. § 43-21-603(3)(c) (Supp. 2005). The youth court clearly did not err when it considered L.C.A.'s prior adjudication as a child in need of supervision because Mississippi law encourages the youth court to consider such a factor. Consequently, this issue is without merit. However, we may only affirm in part, as we face a problem with logistics and the peculiar circumstances of this case.
¶ 22. On February 1, 2005, L.C.A. filed a motion for a supersedeas bond pending appeal. On February 14, 2005, the youth court judge granted L.C.A.'s motion. Apparently L.C.A. has been released from custody pending this appeal. L.C.A.'s date of birth is February 21, 1988. L.C.A.'s eighteenth birthday was February 21, 2006. Mississippi law prohibits any court from sentencing an offender over the age of eighteen to the custody of the Division of Youth Services for placement in a state supported training school. Miss. Code Ann. § 43-21-159(5) (Rev.2004). As such, we can only affirm in part.
¶ 23. Still, there are other dispositional alternatives available to the youth court. Miss.Code Ann. § 43-21-605 (Supp.2005). Accordingly, we affirm in part and remand in part for a new dispositional hearing which excludes the possibility of placement in a state-supported training school.
¶ 24. THE JUDGMENT OF THE JONES COUNTY YOUTH COURT IS AFFIRMED AND REMANDED FOR A NEW DISPOSITIONAL HEARING WHICH EXCLUDES PLACEMENT IN A STATE-SUPPORTED TRAINING SCHOOL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND BARNES, J.
IRVING, J., Dissenting.
¶ 25. With respect, I must dissent from the majority's finding that the Youth Court of Jones County complied with the procedural requirements of Mississippi Code Annotated section 43-21-557 (2004) in adjudicating L.C.A. a delinquent child. I further dissent from the majority's finding that the evidence was sufficient to support the court's judgment of delinquency.
¶ 26. The record does not contain any evidence that the youth court complied with the dictates of section 43-21-557, as required by law, at the commencement of L.C.A.'s adjudicatory hearing on January 26, 2005.[4]
*308 ¶ 27. Prior to January 26, 2005, L.C.A. had two charges pending against him, one in Cause No. 60582-1 and one in 60582-2. The record reflects that both of these cause numbers were scheduled for adjudicatory hearing on January 5, 2005. However, on January 5, L.C.A. admitted the allegations in Cause No. 60582-1 but denied the allegations contained in Cause No. 60582-2. By a form order entered January 5, Cause No. 60582-2 was continued for adjudicatory hearing on January 26, 2005.[5]
¶ 28. In my view, the pivotal finding of the majority  that "the initial hearing was held on January 5, 2005, where the court complied with [section 43-21-557]"  enjoys no support in the record before this Court. As stated, the record does contain a form order signed January 5, 2005, by the youth court judge, wherein Cause No. 60582-2, the case that is before us in this appeal, was continued to January 26. In this form order, the court finds certain facts, the existence of which is a prerequisite to the court's acceptance of the parties' admission of the factual allegations contained in Cause No. 60582-1. The form order also finds a limited number of the conditions that section 43-21-557 requires *309 must be explained or determined by the youth court judge "[a]t the beginning of each adjudicatory hearing." However, it is clear that the form order was executed to comply with the requirements of Mississippi Annotated section 43-21-553 (Rev.2004)[6] rather than the requirements of section 43-21-557. We have no transcript of the hearing held on January 5. Therefore, the majority's finding, that the trial court, at the January 5 hearing, complied with the procedural requirements of section 43-21-557, is perplexing.
¶ 29. At the beginning of the adjudicatory hearing from which this appeal emanates, the record reflects the following proceedings occurred:
THE COURT: L.C.A., Case Number 6058-1A and 6058-2. We are here today for a disposition in 6058-1A and an evidentiary hearing on 6058-2. Is the State ready?
MR. THOMPSON: Yes sir.
THE COURT: Is the juvenile ready?
MS. GRAHAM: Yes, sir.
THE COURT: Please come forward to be sworn in, Mr. Gavin.
[Thereafter, the evidentiary portion of the adjudicatory hearing began.]
The quoted passage demonstrates beyond doubt that the court failed to comply with the procedural requirements of section 43-21-557 when it commenced the adjudicatory hearing in Cause No. 6058-2. As already noted, we have no transcript of the January 5 hearing, but assuming the January 5 order reflects the scope of the discussion at the January 5 hearing, there is still no doubt that the procedural requirements of section 43-21-557 were not met. For example, there is nothing in the January 5 order indicating that the items enumerated in XX-XX-XXX(1)(e)(ii) through (v) were explained to L.C.A.
¶ 30. In In the Interest of J.N., 915 So.2d 1076 (Miss.Ct.App.2005), we reversed the youth court for failing to follow the dictates of section 43-21-557. There, we held:
A child in youth court proceedings is entitled to certain due process rights that cannot be ignored. Sharp v. State, 127 So.2d 865, 869 240 Miss. 629, 638(1961). At the beginning of an adjudication hearing, the youth court must explain to the parties the purpose of the hearing, the possible disposition alternatives, the right to counsel, the right to remain silent, the right to subpoena witnesses, the right to cross-examine witnesses testifying against him, and the right to appeal. Miss.Code Ann. § 43-21-557 (Rev.2004); In re T.L.C., 566 So.2d 691, 699 (Miss.1990).
For these reasons, we find that this case should be reversed and remanded for further proceedings consistent with this opinion.
Id. at 1079-80 (¶¶ 15-16). We found that our decision was controlled by the supreme court decision of In re I.G., 467 So.2d 920 (Miss.1985). Id. at 1079(¶ 14).
*310 ¶ 31. The majority dismisses the importance of our holding in In the Interest of J.N. by citing to the supreme court holding in In re T.L.C., 566 So.2d 691, 699 (Miss.1990). The majority is correct that in In re T.L.C., the Mississippi Supreme Court held that the failure of the youth court to follow the dictates of section 43-21-557 was harmless error. However, it should be noted that In re T.L.C. is distinguishable from our case in that In re T.L.C. involved the failure of the youth court to advise the father of the minor child, where the issue was abuse of the father, while our case involves the failure of the youth court to advise the youthful defendant, where the issue is delinquency. In delinquency cases, the juvenile defendant runs the risk of being committed to a training school, while in abuse cases, the minor child may be removed from the home, but the parent does not risk being sent to jail. Further, in In re T.L.C., the Mississippi Supreme Court did not overrule In re I.G. and specifically noted that In re I.G. relied on three delinquency cases as support for its holding. In Re T.L.C., 566 So.2d at 699. Therefore, In re I.G. remains good law.
¶ 32. I now turn to L.C.A.'s second issue, the insufficiency of the evidence to support the adjudication that he committed the delinquent act of disorderly conduct. The gravamen of the petition against L.C.A. charged: L.C.A. "did purposefully, knowingly, and unlawfully commit the act of disorderly conduct: breach of peace in violation of [section] 97-35-3 of the Mississippi Code of 1972, annotated, against the peace and dignity of the State of Mississippi. L.C.A. behaved disorderly at the Pine Belt Alternative School, Laurel, MS, by calling Mr. Gavin a `m____.'"
¶ 33. The record reflects that the total evidence offered by the county prosecutor in support of the charge consisted of the brief testimony of two witnesses. The first witness, Gavin, testified as follows:
Q. Okay. Now, the disorderly conduct arose from the deputies coming out and picking him up; 
A. Yes, sir.
Q.  is that correct?
A. Yes, sir.
Q. Tell us what happened.
A. They were taking him [L.C.A.] to the car  had him in handcuffs and [L.C.A.] got upset and said the handcuffs were too tight. He tried to knee the sheriff in the groin section  the deputy. He just went to cussing, and I told him, you know, to have his mother call me before he comes back to school. And at that time, he call me a very ugly name.
Q. Now, that's the basis of this petition today, is that his behavior was disorderly towards you and the school.
A. Yes, sir.
Q. Tell us what it was that he exactly said toward you.
A. He called me a m____ f.
Q. And was that directed towards you?
A. Yes, sir.
Q. And where were you at when he called you that?
A. I was standing outside as he was getting in the [patrol] car.
¶ 34. The second witness, Knight, a security officer at Pine Belt Alternative School, testified as follows:
Q. Okay. Officer Knight, on or about November 3rd of '04, I believe there was  L.C.A. was being arrested or being picked up on a pick-up order there at the school; is that correct?
A. Yes, sir, that's correct.

*311 Q. Tell us what happened in regard to any outburst he made while he was being picked up.
A. He had been arrested for disorderly conduct by Deputy Carroll Windham. Myself, Mr. Gavin and Mr. Murphy were just sort of following them as they went out the door. He was  the deputy was taking him out to the patrol unit to transport him down here. All of a sudden, he just turned around, looked at Mr. Gavin and called him a m____ f.
Q. What tone of voice did he use when he called him that?
A. A loud one. Shouted it back at him. And at that point, he even started resisting arrest and had to be physically controlled, even with cuffs on. And then he settled down, and we put him in the patrol car.
¶ 35. Mississippi Code Annotated section 97-35-3(1)(b) (Rev.2004), the code section which L.C.A. was charged with having violated, provides in pertinent part:
Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby:
* * * *
insults or makes rude or obscene remarks or gestures, or uses profane language, or physical acts, or indecent proposals to or toward another or others, or disturbs or obstructs or interferes with another or others,
* * * *
shall be guilty of disorderly conduct. . . .
¶ 36. The pivotal inquiry is whether there was sufficient evidence to warrant a finding that L.C.A., while in handcuffs and being escorted by sheriff deputies, intended to provoke a breach of the peace when he uttered the infamous word or, if not, whether circumstances then existed under which a breach of the peace might have occurred. The majority spends little time addressing this crucial issue, finding that "[i]f such conduct was not with an intention to provoke a breach of the peace, then, certainly, a breach of the peace may have been occasioned thereby." Majority opinion at (¶ 6). Respectfully, I cannot disagree more. It is more than a stretch to conclude that circumstances are ripe for a breach of the peace when the would-be instigator is being ushered in handcuffs to a patrol car by sheriff deputies. But more importantly, the petition filed against L.C.A., as any fair and reasonable reading of it reveals, charges that L.C.A. breached the peace and behaved disorderly by calling Gavin a m____. The prosecution did not offer, and the record does not reveal, one scintilla of evidence that the peace was actually breached as a result of L.C.A.'s use of the "M" word, and, notwithstanding the charging language of the petition, calling another the "M" word, without more, does not constitute disorderly conduct within the meaning of section 97-35-3.
¶ 37. It seems the majority tacitly concedes that there is no evidence to support a finding that L.C.A., by calling Mr. Gavin the "M" word, intended to provoke a breach of the peace. As I have already suggested, it is indeed contorted logic to conclude that the handcuffed juvenile who was being escorted by sheriff deputies intended to provoke a breach of the peace unless he assumed that the deputies and Gavin would lose their composure and attack him. It is further contorted logic to assume that L.C.A. wanted to be physically assaulted or thought that a school official and a sheriff deputy, who were both by virtue of their positions required to protect him, would attack him. Therefore, as demonstrated, a fair analysis of the evidence compels the inescapable conclusion *312 that the evidence was insufficient to support a finding that L.C.A. intended to provoke a breach of the peace when he called Mr. Gavin the "M" word. Likewise, based on the same reasoning and analysis just employed, I cannot agree that the evidence was sufficient to support a finding that the circumstances were such that a breach of the peace may have been occasioned by L.C.A.'s use of the "M" word. To conclude that, under the factual circumstances presented, a breach of the peace may have occurred is to conclude that law enforcement and school officials are likely to physically attack a student who verbally insults them, even if the student is handcuffed and under the physical control of a law enforcement official at the time of the verbal insult by the student.
¶ 38. While I find the evidence insufficient to support a finding that all of the elements of the crime of disorderly conduct were proved in this case, I hasten to add that I do not condone L.C.A.'s action. In fact, I believe the proof was sufficient to find that L.C.A. committed the delinquent act of public profanity within the meaning of Mississippi Code Annotated section 97-29-47 (2000) which prohibits cursing or the use of vulgar and indecent language in the presence of two or more persons. Had the petition charged L.C.A. with a violation of this section, I would affirm.
¶ 39. For the reasons presented, I dissent and would reverse and render.
KING, C.J., AND BARNES, J., JOIN THIS OPINION.
NOTES
[1] Mississippi Code Annotated § 43-21-651(1)(Rev.2004) requires that on appeal only the initials of the minor shall appear. We, therefore, decline to identify the minor by name.
[2] The outcome of L.C.A.'s urinalysis test led to a youth court adjudication in which the youth court adjudicated L.C.A. to be a "child in need of supervision."
[3] In considering whether a child is a delinquent or a child in need of supervision, the youth court may only consider evidence presented at the adjudication hearing. Miss. Code Ann. § 43-21-559 (Rev.2004).
[4] Section 43-21-557 reads in part:

(1) At the beginning of each adjudicatory hearing, the youth court shall:
(a) verify the name, age and residence of the child who is the subject of the cause and ascertain the relationship of the parties, each to the other;
(b) ascertain whether all necessary parties are present and identify all persons participating in the hearing;
(c) ascertain whether the notice requirements have been complied with and, if not, whether the affected parties intelligently waived compliance in accordance with Section 43-21-507;
(d) explain to the parties the purpose of the hearing and the possible dispositional alternatives thereof; and
(e) explain to the parties:
(i) the right to counsel;
(ii) the right to remain silent;
(iii) the right to subpoena witnesses;
(iv) the right to cross-examine witnesses testifying against him; and
(v) the right to appeal.
(2) The youth court should then ascertain whether the parties before the youth court are represented by counsel. If a party before the youth court is not represented by counsel, the youth court shall ascertain whether the party understands his right to counsel. If the party wishes to retain counsel, the youth court shall continue the hearing for a reasonable time to allow the party to obtain and consult with counsel of his choosing. If an indigent child does not have counsel, the youth court shall appoint counsel to represent the child and shall continue the hearing for a reasonable time to allow the child to consult with his appointed counsel.
[5] The order reads in pertinent part:

Came on this day for adjudicatory hearing on the petition filed by the county prosecutor in this matter, and the Court finds and orders.
1. That the Court declares the minor child indigent and Honorable Dan Henson and/or Honorable Billie Graham are appointed as Youth Court Public Defenders to represent the minor child; that Honorable Billie Graham is appointed to represent the child for the purpose of this hearing, and said child is represented by competent counsel and has had sufficient time to prepare for this hearing; and said minor child has been properly served with process.
2. That all necessary parties are before the Court and the parent/guardian/custodian R.A. waives formal service of process and enters appearance in this hearing voluntarily, who the Court finds had legal custody at the time of this alleged offense; that all parties waive the right to have any hearing in this matter in the Second Judicial District of Jones County, Mississippi.
3. That the parties present, including the minor child and parent/guardian/custodian, fully understand their rights and the potential consequences of the hearing, as well as admission, and the dispositional alternatives available to the Court.
4. That the child having heard reading of the allegations in the petition said minor child denied Count I Cause No. 6058-2 and admitted Count I Cause No. 6058-1 and is hereby adjudicated CHIN
IT IS ORDERED THAT Cause 6058-2 is set this day in open Court for evidentiary hearing as to Count No. 1. on the 26 day of January 2005 at 9:00 a.m. and minor and parent are ordered to appear on said day and time; Cause No. 6058-1 is set for disposition on January 26, 2005 at 9:00 a.m.
[6] Section 43-21-553 reads in part:

At any time after the petition has been filed, all parties to the cause may appear before the judge and admit the allegations of the petition. The judge may accept this admission as proof of the allegations if the judge finds that:
(a) the parties making the admission fully understand their rights and fully understand the potential consequences of their admission to the allegations;
(b) the parties making the admission voluntarily, intelligently and knowingly admit to all facts necessary to constitute a basis for court action under this chapter;
(c) the parties making the admission have not in the reported admission to the allegation set forth facts that, if found to be true, constitute a defense to the allegation; and
(d) the child making the admission is effectively represented by counsel.